And our next case this morning is United States v. Felders. Good morning, Your Honors. Mike Tuschinski. Go ahead. On behalf of Appellant Felders. Your Honors, during the execution of a search warrant by the Indiana State Police on November 2nd of 2017, Appellant Felders was taken into custody. A handgun was found nearby Felders' person and Felders was later questioned regarding that handgun and ultimately charged with a violation of 18 U.S.C. 922 G. Transcripts from both the suppression hearing and the trial show that Mr. Felders essentially gave three statements. A statement inside the house to Detective Hoffman. A statement inside the patrol car, first to Trooper Price and then to Trooper Hoffman. And then at the ER room at the hospital to Trooper Grewitt. Mr. Felders had filed a motion to suppress these statements on March 17th, 2019. The motion alleged that the statements to Price, Hoffman and Grewitt were made without Miranda warnings or adequate Miranda warnings. Defendant argued for suppression of these statements made in the house, the car and the hospital at a hearing held on April 15th of 2019. That motion was denied by the district court. At trial later that year, as Trooper Price began to testify, Felders objected. The court agreed to show a continuing objection regarding the defendant's three statements throughout trial. I would assert that the issue is preserved for the court to review on appeal. At the suppression hearing, the government had the burden to show the statements made by Felders who were subject to custodial interrogation were done so in compliance with Miranda v. Arizona by a preponderance of the evidence. It's well established that Miranda requires a defendant in custodial interrogation be advised of his right to remain silent, that anything he says may be used against him in a court of law, that he has the right to counsel and that counsel will be appointed to him if he cannot afford so. Granted, there is no specific phrases or syllables that need to be dictated to a defendant or that such advisements need to be given in a particular order. The inquiry is simply whether the warnings given reasonably convey to a suspect his rights as required by Miranda v. Arizona. I think in this case the record reflects that Trooper Price testified both in the suppression hearing and at trial and he testified consistently that he read Miranda from a card, a card that had been supplied to him by the state police by the state of Indiana. But that card was not read into evidence at the suppression hearing or trial, nor was a copy of it introduced into evidence at either the suppression hearing or trial. His testimony showed there was no written waiver of Miranda rights executed or presented to Mr. Felders and that no recording or advisement, pardon me, that there was no recording of the advisement or questioning. Trooper Hoffman testified that he relied on his conversation with Trooper Price that Felders had already been Mirandized and Trooper Gruitt testified that while at the hospital he asked Mr. Felders if he had been Mirandized and reminded Mr. Felders everything he said would be put in his report. And although the district court found the troopers credible which is certainly understandable given the totality of the transcripts from both proceedings, there is little on the record to evaluate what specific advisements or language was actually given to Mr. Felders beyond what was described as Miranda warnings by all three troopers. And while admittedly Miranda warnings may have a common meaning, I think it goes too far to infer what specific advisements were actually made in this case to Mr. Felders and whether or not they were adequate. I assert that it's error to presume that a defendant has been effectively apprised of his rights and that his privilege against self-incrimination has been adequately safeguarded simply on the assertion by Trooper Price that he gave Miranda warnings by the assertion of Trooper Hoffman that Trooper Price told me he gave Miranda warnings and the question by Trooper Gruitt, Mr. Felders, you were Mirandized, correct? On the record here, we have no testimony, document or recording to turn to examine the actual language used by Trooper Price or the actual advisements given. Based on that, I would assert that a knowing and intelligent waiver cannot be assumed on this record. In the cases that look and evaluate the adequacy of language, the courts typically have some type of actual testimony. This is what I told the suspect or a written waiver, sometimes more than one written waiver. In other cases, it's an issue of whether or not the written waiver is required. Here, we simply have a silent record on that issue. Well, isn't that, counsel, because of the nature of the challenge that was raised in the district court on the suppression motion? It wasn't an adequacy argument. It was a debate over whether the warnings were given at all. If the argument that you're making now had actually been raised in the district court, we might not have the silent record that you've been emphasizing in your oral argument. Understood, Your Honor. I would agree that in terms of the transcripts from argument, there was little discussion with respect to the adequacy. It is, I believe, raised in the actual written motion that was filed with the court in March of 2019. So, what is our review standard here? I would submit to the court that the issue was preserved and the standard for the court is de novo. I understand the government's argument, but even so, with respect, if the court is of the opinion that that argument was waived in the district court, I would assert that that argument was not an intentional waiver, but rather it's simply a forfeiture. Granted, with respect to Federal Rule 52 and plain error, I would still establish or I would assert to the court that we do here have an error and that it's plain and that the record is silent on the advisement. We are approaching your rebuttal time now. You have 30 seconds for your rebuttal. Thank you, Your Honor. I think that being said, I think the rights affected were substantial given that I believe our inadmissible statements were admitted and considered by the jury and that it seriously affects the fairness and integrity of the judicial proceedings. Thank you. Thank you. Mr. McKeever. Yes, ma'am. Please, the court. Good morning, Your Honors. Joe McKeever here for the United States of America. There is no error, much less plain error for the district court to infer that an Indiana State issued Miranda card accurately recited the Miranda warnings or some affected alternative under Powell. And there was no contrary evidence during either the suppression hearing or during trial to show that the card did not have the right rights printed on it. And Judge Sykes, I think that you got to the heart of the issue that the nature of the challenge has changed from the district court now to appeal, where at the district court and in fairness to the district court, the district court did not make an express finding that the wording on the card was accurate because the judge was not asked to make that finding. And after going through the suppression hearing, the judge at the district court understood the issue to be that I have to try to decide who remembers things correctly. And that's on the suppression transcript at page 74. So the district court judge himself understood that the real issue here was did he or didn't he? Did Trooper Price read the Miranda rights as he said he did or was Mr. Felders correct that he never read the rights? Going to the facts that came out at the suppression hearing, Trooper Price testified that he read Mr. Felders' Miranda rights directly from that state issued card. And that's approved by the Indiana State Police. That's at the suppression transcript on page 10. Mr. Felders said that he understood the rights. That's also on page 10. And then Trooper Price proceeded to question him. And even when Mr. Felders was on the stand and he was asked about his version of events, what happened that night or that morning, I should say, Mr. Felders, the question was posed to him in this way. Did Trooper Price Mirandize you? Did Trooper Hoffman Mirandize you? And his answer was no. That's on the suppression transcript at page 65. So even Mr. Felders, when he was asked the question, were you Mirandized, he understood the question to mean in the common parlance that we understand it. But the way that's been the last 50 years, were you asked whether you had the right to remain silent? And were you asked whether you had the right to counsel? He did not ask for any clarification. His version of events was just no, I had not been Mirandized. Was Officer Price in uniform at the suppression hearing? His testimony was that he was not in uniform, but he kept his credentials with him. And in his credentials, he always keeps a copy of this Miranda card. So he was not in uniform when he testified at the suppression hearing? Oh, I'm sorry, I misunderstood your question. Do you believe state police officers or local police officers come to court in uniform? That's been my experience too. I was not present at the suppression hearing, so I don't know if he was wearing it that day. Or at trial? Same answer. I wasn't at the trial, and I'm not sure if he had it on at trial either. Because there was a passage of his testimony where he talks about exactly where on his person he keeps the state-issued Miranda card when he's in uniform, which at a Miranda hearing would merely prompt the question, can you produce the card and let's read it into the record? Evidently, that didn't happen here. That's true. And looking back at volume 2 of the trial transcript, it does look like the prosecutor for the government said in his closing argument that Trooper Price actually took out the Miranda card while he was on the stand, and that's at page 11 of volume 2 of the trial transcript. That makes me think that he was probably in uniform and that he might have produced the card. Nobody thought to ask him to read it into the record? Correct. And that underscores for the government's perspective that the real issue was not the wording on the card, but it was whether the rights were right at all. Counsel, is there any evidence suggesting that there are bogus Miranda cards floating around? For example, the Onion might print off a bunch of cards with phony warnings. No argument that there are such things around? No argument, Your Honor, and I have thought along the same lines. What if the card said something like you have the right to a phone call, which is not the Miranda right? There's no contrary evidence in the record at either the suppression hearing or the trial that the Miranda card stated on it exactly what it purported to be, which is the Miranda warnings. And I assume did not contain a picture of Alfred E. Newman. Correct, Your Honor. That's the assumption. At least there's no evidence to that effect. Surprising my comment was. Excuse me, Your Honor? Never mind. That's right. Go ahead with your argument. The government submits that the district court should be affirmed. Even if there was error, it was harmless error. At the trial, we learned that a woman named Rose Smith owned a gun. She had never been at the house where the warrant was served. Mr. Felder's helped her move out a few months before this happened, and he had access to the box where the gun was found. So there was overwhelming evidence that Mr. Felder's possessed the gun even without the statements. And unless the court has more questions for me about either the standard of review or the evidence as it pertains to harmless error, the government rests on its brief. Thank you. Mr. Chudinsky. Thank you, Your Honor. I have little to add in terms of rebuttal, but if I could, with respect to both a suppression hearing and the trial, I was present and I would tell the court that all three troopers, Price, Hoffman, and Grewitt testified at both proceedings in their Indiana State Police uniforms. And at one point in the testimony, the card was actually produced? I don't dispute that from the transcripts, Your Honor. With candor, as I stand here, I don't recall that in my brain, but I certainly do not doubt the transcripts as cited by the government. Okay. Anything further? Your Honor, I would simply, without the statements by Mr. Felder's, while the government still has a case to argue, I think without his statements, it becomes a case based on circumstantial evidence and inferences rather than direct evidence. And as such, we take it out of the realm of harmless error. All right. Thank you very much. Thank you. Our thanks to all counsel. The case is taken under advisement.